Martin P. Schrama
Stefanie Colella-Walsh
**STARK & STARK PC**
100 American Metro Blvd.
Hamilton, NJ 08619
T: (609) 895-7261
mschrama@stark-stark.com
scolellawalsh@stark-stark.com

Matthew J. Langley
Christopher Nienhaus
**ALMEIDA LAW GROUP LLC**
849 W. Webster Ave.
Chicago, IL 60614
T: (312) 576-3024
matt@almeidalawgroup.com
chris@almeidalawgroup.com

*Counsel for Plaintiffs and the Proposed Classes*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK DIVISION

| | |
|---|---|
| CHEYENNE BEYER, individually and on behalf of others similarly situated,<br>1390 Mission Street, #708<br>San Francisco, CA 94103,<br><br>Plaintiff,<br><br>YOLANDA PITRE, individually and on behalf of others similarly situated,<br>45 Crown Court<br>San Mateo, CA 94402,<br><br>Plaintiff,<br><br>CAMERON GASKINS, individually and on behalf of others similarly situated,<br>27 Palisade Avenue, Apt. 410<br>Jersey City, NJ 07306,<br><br>Plaintiff,<br><br>LATONYA WRIGHT, individually and on behalf of others similarly situated,<br>170 Wyckoff Avenue #2L<br>Brooklyn, NY 11237,<br><br>Plaintiff,<br><br>And | Case No.:<br><br>Judge:<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>**DAMAGES AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR A JURY TRIAL** |

1

DAVONNA COX, individually and on
behalf of others similarly situated,
   2822 28th Street SE Apt. 1B
   Washington, D.C. 20020,

   Plaintiff,

v.

KENVUE BRANDS LLC, a Delaware and
New Jersey corporation,
   1 Kenvue Way
   Summit, NJ 07901

   Defendant.

---

   Plaintiffs Cheyenne Beyer, Yolanda Pitre, Cameron Gaskins, LaTonya Wright, Davonna Cox, individually and on behalf of all similarly situated persons, allege the following against Defendant Kenvue Brands LLC ("Kenvue" or "Defendant") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by Plaintiffs' counsel and review of public documents as to all other matters:

## INTRODUCTION

   1.  To avoid exposure to allergens that may irritate the skin or otherwise cause allergic symptoms, including itchy rashes, dry, cracked, and scaly skin, bumps that may ooze, swelling, burning sensations, and tenderness, consumers are increasingly seeking skin care products labeled "hypoallergenic" and suitable for sensitive skin for themselves and their children.

   2.  Defendant has seized on this trend, launching a marketing scheme for its Aveeno Kids and Aveeno Baby skin care products that is based on appealing to consumers who are seeking products that are hypoallergenic, gentle, and suitable for irritable and sensitive skin. Indeed, nearly all of Defendant's Aveeno Kids and Aveeno Baby brand skin care products are labeled and marketed as "hypoallergenic" and most also including labeling indicating to consumers that they

4915-9523-6177, v. 4

are suitable for sensitive skin, including the phrases "sensitive skin," "gentle," "tear-free," and "suitable for all skin tones."

3.      However, Defendant's "hypoallergenic" and "sensitive skin" representations with respect to these products are false, deceptive, and misleading because those skin care products contain ingredients that are known allergens[1] that may irritate the skin or even trigger skin reactions and allergic symptoms.  Consumers reasonably believe and expect that a product represented as, for example, "hypoallergenic" and suitable for sensitive skin does not contain allergens.

4.      Defendant has benefited significantly from its false, deceptive, and misleading "hypoallergenic" and "sensitive skin" marketing scheme, increasing its market share and net profits at the expense of consumers who are willing to pay a premium for products that are suitable for sensitive and irritable skin or who want to purchase a product free of the allergen ingredients Aveeno includes in its skin care products.

5.      Plaintiffs bring this action individually and on behalf of similarly situated consumers who purchased Defendant's Aveeno Kids and Aveeno Baby skin care products that were falsely, deceptively, and misleadingly labeled and marketed as "hypoallergenic" and suitable for sensitive skin despite containing known allergens as ingredients (collectively, the "Falsely Labeled Products")[2] during the applicable statute of limitations period (the "Class Period").

---

[1] As detailed below, the allergens in Defendant's products include Cocamidopropyl Betaine (CAPB), Sodium Benzoate, Isopropyl Palmitate, Caprylyl Glycol, Decyl Glucoside, Phenoxyethanol, Caprylic/Capric Triglyceride, Panthenol, and Fragrance.

[2] As detailed below, the Falsely Labeled Products are Aveeno: Kids Sensitive Skin Face & Body Wash, Kids Sensitive Skin Face & Body Gel Cream, Kids Sensitive Skin Bubble Bath, Daily Moisture Healthy Start Newborn Balm, Baby Daily Moisture Cream with Prebiotic Oat, Coconut & Shea Butter, Baby Daily Moisture Lotion, Baby Eczema Therapy Moisturizing Cream, Baby Daily Moisture Healthy Start Newborn Wash, Baby Sensitive Skin Bubble Bath with Oat Extract, Baby Daily Moisture 2-in-1 Wash & Shampoo, Baby Daily Moisture Wash & Shampoo, and Baby Cleansing Therapy Moisturizing Wash.

4915-9523-6177, v. 4

6.      Plaintiffs seek to represent a putative nationwide class and subclasses of residents of New Jersey, California, New York, and Washington, D.C. and seek, among other relief, actual damages and injunctive relief to prevent Defendant from continuing its false, deceptive, and misleading marketing scheme, which has harmed Plaintiffs and the members of the putative classes.

## PARTIES

**A. Plaintiffs**

7.      Plaintiff Cheyenne Beyer is an individual consumer who, at all relevant times, was a resident of San Francisco County in the State of California.  Plaintiff Beyer purchased Defendant's Falsely Labeled Products, including Aveeno Kids Sensitive Skin Face & Body Wash and Aveeno Baby Daily Moisture Wash & Shampoo from Target located at 2675 Geary Blvd, San Francisco, California 94118, in or around March 2025 and used those products until approximately May 2025.

8.      Plaintiff Yolanda Pitre is an individual consumer who, at all relevant times, was a resident of San Mateo County in the State of California.  Plaintiff Pitre purchased Defendant's Falsely Labeled Products, including Aveeno Kids Sensitive Skin Face & Body Wash from Target.com in or around June 2024 and used those products until approximately November 2024.

9.      Plaintiff Cameron Gaskins is an individual consumer who, at all relevant times, was a resident of Hudson County in the state of New Jersey.  For approximately two years, from 2023 through May 2025, Plaintiff Gaskins regularly purchased Defendant's Falsely Labeled Products, including Aveeno Kids Sensitive Skin Face & Body Gel and Aveeno Baby Daily Moisture Lotion, from Target stores located at 100 14th Street, Jersey City, New Jersey 07310 and 500 Nassau Park Blvd., Princeton, New Jersey 08540, and a Walmart located at 400 Park Place, Secaucus, New

Jersey 07094.  Plaintiff Gaskins also purchased other products manufactured, marketed, advertised, and distributed by Defendant.

10.     Plaintiff LaTonya Wright is an individual consumer who, at all relevant times, was a resident Brooklyn County in the state of New York.  For approximately five years, from 2020 through approximately May 2025, Plaintiff Wright regularly purchased Aveeno Kids Sensitive Skin Face & Body Wash from Target located at 139 Flatbush Avenue, Brooklyn, New York 11217.

11.     Plaintiff Davonna Cox is an individual consumer who, at all relevant times, was a resident of the District of Columbia.  Plaintiff Cox purchased Defendant's Falsely Labeled Products, including Aveeno Kids Sensitive Skin Face & Body Wash, from Target in or around May 2025.  In addition, Plaintiff Cox purchased other products manufactured, marketed, advertised, and distributed by Defendant.

**B. Defendant**

12.     Defendant Kenvue is a corporation with its principal place of business in Summit, New Jersey.  Defendant Kenvue markets and sells skin care products it labels as "hypoallergenic" and suitable for sensitive skin under the Aveeno brand.

13.     Defendant Kenvue manufactured, marketed, advertised, and distributed the Falsely Labeled Products throughout the United States during the Class Period.  Defendant Kenvue created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling for the Falsely Labeled Products.

14.     Defendant Kenvue has profited substantially from the sales of the Falsely Labeled Products during the Class Period.  According to its 2025 Proxy Statement, Defendant generated $15.5 billion in net sales in 2024 from its three product segments,[3] earning it a spot on "the

---

[3]        Kenvue        2025        Proxy        Statement        at        2,

prestigious Fortune 500 list for the first time" in 2025.[4]

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there exists minimal diversity between class members and Defendant and because the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

16.     This Court has personal jurisdiction over Defendant because it is a corporation with its principal place of business and headquarters located at 1 Kenvue Way, Summit, New Jersey 07901, within the District of New Jersey.  Defendant regularly conducts business within this District, maintains offices and operations within this District, and has sufficient minimum contacts with this District such that the exercise of jurisdiction over Defendant is proper.  A substantial portion of the events giving rise to the claims alleged here occurred in New Jersey.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District, a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District, and Defendant engaged in continuous and systematic business activities within this District.

---

https://s202.q4cdn.com/991673667/files/doc_downloads/2025/04/Kenvue-2025-Proxy-Statement.pdf (To be clear, Defendant did not generate $15.5 billion in net sales in 2024 from its Aveeno-branded products.  Kenvue has three product segments and owns several popular brands, including Tylenol, Neutrogena, Listerine, Johnson's Band-Aid Brand, Zyrtec, and Nicorette. Defendant does not disclose product- or brand-specific financial figures).

[4] Kenvue Debuts on Fortune 500 List, KENVUE, https://investors.kenvue.com/financial-news/news-details/2025/Kenvue-Debuts-on-Fortune-500-List/default.aspx.

## FACTUAL ALLEGATIONS

**A. Consumers Actively Seek Skin Care Products that Are Hypoallergenic and Suitable for Sensitive Skin**

18.    Skin allergies are prevalent among both children and adults in the United States.  In 2018, 9.2 million children in the United States reported skin allergies, according to the Centers for Disease Control and Prevention.[5]  Among U.S. children aged 0-4 years old, the prevalence of skin allergies was even higher at 14.3%.[6]

19.    Skin allergies are similarly prevalent among adults in the United States, with some studies finding that as high as 20% of the general population suffers from skin allergies.[7]

20.    The prevalence of dermatological conditions related to skin care products has increased significantly in recent years.[8]  On its own website, Defendant recognizes that "71% of adults say they have sensitive skin"[9] and remarks that "the number of people who self-declare they have sensitive skin has increased by a whopping 55% in just two decades."[10]

21.    Skin care products like soaps, lotions, and face and body washes frequently contain ingredients that may cause skin allergies.  However, not all skin care products are labeled "hypoallergenic" and suitable for sensitive skin.

---

[5] Centers for Disease Control and Prevention, Summary Health Statistics Tables: National Health Interview Survey, Table C-2: Hay Fever, Respiratory Allergies, Food Allergies, and Skin Allergies in the Past 12 Months for Children Under Age 18 Years, by Selected Characteristics: United States, 2018, https://archive.cdc.gov/#/details?q=skin%20allergies&start=0&rows=10&url=https://www.cdc.gov/nchs/nhis/shs/tables.htm.
[6] *Id.*
[7] Alinaghi F. *et al.*, *Prevalence of Contact Allergy in the General Population: A Systemic Review and Meta-Analysis*, CONTACT DERMATITIS, Vol. 80, Issue 2, Pages 77-85 (Oct. 29, 2018).
[8] *See* Erin M. Warshaw, MD, MS, *et al.*, *Contact Dermatitis to Personal Care Products Is Increasing (But Different!) in Males and Females: North American Contract Dermatitis Group Data, 1996-2016*, Journal of the American Academy of Dermatology, Vol. 85, Issue 6, Pages 1446-1455 (Dec. 2021).
[9] About Us, Sensitive Skin State, AVEENO, https://www.aveeno.com/sensitive-skin-state.
[10] The State of Skin Sensitivity, AVEENO, https://www.aveeno.com/state-of-skin-sensitivity.

7

22.     Even consumers who do not have sensitive skin or who suffer from skin allergies seek skin care products labeled "hypoallergenic" and suitable for sensitive skin when shopping for themselves and their children to avoid the presence of allergens in their skin care products. Consumers believe and expect that a product labeled "hypoallergenic" and suitable for sensitive skin does not contain allergens and are willing to pay more for a product labeled "hypoallergenic" and suitable for sensitive skin.

**B.  Defendant's "Hypoallergenic" and "Sensitive Skin" Marketing Scheme**

23.     Defendant's marketing scheme for nearly all of its Aveeno Kids and Aveeno Baby skin care products is based on appealing to those consumers who are seeking products that are hypoallergenic and suitable for sensitive skin.

24.     Indeed, of the 11 Aveeno Kids products advertised on its website, nine of those products are advertised and labeled as "hypoallergenic" and suitable for sensitive skin.[11]

25.     Three of Defendant's Aveeno Kids products are skin care products: Kids Sensitive Skin Face & Body Wash, Kids Sensitive Skin Face & Body Gel Cream, and Kids Sensitive Skin Bubble Bath (collectively, the "Aveeno Kids Products").

26.     Each of the Aveeno Kids Products is labeled "hypoallergenic."

27.     Each of the Aveeno Kids Products is labeled as suitable for "sensitive skin."

28.     However, each of the Aveeno Kids Products contains known allergens.

29.     The same is true for Defendant's Aveeno Baby line of products.  Defendant's Aveeno Baby product line contains five body lotions, four of which are advertised and labeled as "hypoallergenic" and suitable for sensitive skin: Daily Moisture Healthy Start Newborn Balm, Baby Daily Moisture Cream with Prebiotic Oat, Coconut & Shea Butter, Baby Daily Moisture

---

[11] Created Just For Kids, AVEENO, https://www.aveeno.com/kids.

Lotion, and Baby Eczema Therapy Moisturizing Cream.[12]

30.     Similarly, Defendant's Aveeno Baby product line contains six body washes, five of which are advertised as "hypoallergenic" and suitable for sensitive skin: Baby Daily Moisture Healthy Start Newborn Wash, Baby Sensitive Skin Bubble Bath with Oat Extract, Baby Daily Moisture 2-in-1 Wash & Shampoo, Baby Daily Moisture Wash & Shampoo, and Baby Cleansing Therapy Moisturizing Wash.[13]

31.     These body lotions and body washes from Defendant's Aveeno Baby line of products are collectively referred to as the "Aveeno Baby Products."

32.     Each of the Aveeno Baby Products is labeled "hypoallergenic."

33.     Each of the Aveeno Baby Products is labeled as suitable for sensitive skin.

34.     However, each of the Aveeno Baby Products contains known allergens.

35.     As stated above, the Aveeno Kids Products and Aveeno Baby Products constitute the "Falsely Labeled Products."

**C.  Defendant's Representations**

36.     Each of the Falsely Labeled Products' labels prominently represents to consumers that the respective Falsely Labeled Product is "hypoallergenic" and suitable for sensitive skin. *See* Exhibit A – Product Labels.

37.     For example, the following image depicts a Falsely Labeled Product label stating that it is "hypoallergenic," suitable for "sensitive skin," "tear free," and "suitable for all skin tones," and that it "gently washes away dirt and germs without drying":

---

[12]     Baby Lotion, AVEENO, https://www.aveeno.com/products/baby-care/lotion?category=body%2520lotion.
[13]     Baby Body Wash, AVEENO, https://www.aveeno.com/products/baby-care/body-wash?category=body%2520wash.

4915-9523-6177, v. 4



*Fig. 1:  Front label of Aveeno Kids Sensitive Skin Face & Body Wash*

38.    Defendant also makes additional representations on its website that each Falsely

Labeled Product is "hypoallergenic" and suitable for sensitive skin.[14]  For example, on the product

---

[14] *See id.*

page for Aveeno Kids Sensitive Skin Face & Body Wash with Oat Extract, Defendant represents: "This hypoallergenic face & body wash for kids has a tear-free formula with oat extract that leaves skin feeling moisturized & smelling fresh."[15]  On that product page, Defendant also represents that the Falsely Labeled Product: "Cleanses kids' sensitive skin without drying."[16]

39.    Defendant makes additional representations on the product pages for the Falsely Labeled Products that further obscure the fact that the Falsely Labeled Products are not hypoallergenic or suitable for sensitive skin, including representations that the Falsely Labeled Products are "specially designed for kids' developing & sensitive skin," that the Falsely Labeled Products are "gentle" and made with a "tear-free formula."[17]

40.    Defendant also advertises on the websites of other retailers, including Amazon, Target, CVS, and Walgreens, that each Falsely Labeled Product as "hypoallergenic" and suitable for sensitive skin.

41.    Defendant knows that consumers rely on Defendant's representations regarding the Falsely Labeled Products for basic safety, but also to avoid including ingredients that are known allergens for its products that are labeled "hypoallergenic" and suitable for sensitive skin.

**D. Defendant's Falsely Labeled Products in Fact Contain Known Allergens**

42.    Each of Defendant's Falsely Labeled Products contains one or more of the following substances which are classified as allergens.  *See also* Exhibit B – Product Ingredients.

43.    ***Cocamidopropyl Betaine ("CAPB"):*** The American Dermatitis Society designated CAPB as the "Allergen of the Year" in 2004.  Defendant's former parent company, Johnson &

---

[15] *See* Aveeno Kids Sensitive Skin Face & Body Wash with Oat Extract, https://www.aveeno.com/products/kids/sensitive-wash.
[16] *Id.*
[17] *Id.*

Johnson, knew that CAPB is an allergen and funded a study to identify an alternative, non-allergen ingredient. According to that study, "[d]evelopment of improved [zwitterionic surfactants] as CABP alternatives presents an opportunity to eliminate potential sensitizers," *i.e.*, allergens, "thus reducing the risk of allergic contact dermatitis (ACD) from personal care products."[18]

44.    ***Panthenol*:** "Panthenol is important to consider as a contact allergen especially in product applied on damaged skin."[19] Panthenol "may act as a sensitizer," *i.e.*, allergen.[20] "Clinicians should be aware of the increasing use of topical products, cosmetics, and others containing panthenol and its associated risk of allergic contact dermatitis," or ACD.[21]

45.    ***Phenoxyethanol*:** Phenoxyethanol is used as a preservative in cosmetic products and also as a stabilizer in soaps. Skin exposure to phenoxyethanol has been linked to allergic reactions.[22]

46.    ***Caprylyl Glycol*:** Caprylyl Glycol is a para-preservative used in cosmetics that researchers have identified as a contact allergen.[23]

47.    ***Decyl Glucoside*:** Decyl Glucoside is a mild surfactant that researchers have identified as a contact allergen.[24]

48.    ***Sodium Benzoate*:** Sodium Benzoate is a "known allergen with increasing

---

[18] *Id.*

[19] Coco-Viloin, *Allergic Contact Dermatitis and Delayed Wound Healing from Panthenol*, CONTACT DERMATITIS, Vol. 91, Issue 6, Pages 518-20 (Dec. 2024).

[20] *Id.*

[21] *Id.*

[22] Bohn, S., *Phenoxyethanol-induced Urticaria*, Allergy, Vol. 56, Issue 9, Pages 922-23 (2001).

[23] Kreeshan, F.C., *Allergic Contact Dermatitis to Caprylyl Glycol: A Novel "Para-Preservative" Allergen*, CONTACT DERMATITIS, Vol. 83, Pages 418-19 (2020); Johansen, J., *Novel Insights Into Contact Dermatitis*, JOURNAL OF ALLERGY AND CLINICAL IMMUNOLOGY, Vol. 149, Issue 4, Pages 1162-71 (Apr. 2022).

[24] *Contact Allergy to the Mild Surfactant Decylglucoside*, CONTACT DERMATITIS, Vol. 49, Issue 6, Pages 304-05 (Mar. 2004).

frequency of use."[25]

49. ***Caprylic/Capric Triglyceride***: Studies have found that Caprylic/Capric Triglyceride may cause facial allergic contact dermatitis.[26]

50. ***Isopropyl Palmitate***: Studies have reported contact allergic reactions to Isopropyl Palmitate.[27]

51. ***Fragrance***: The term "Fragrance" on a product label represents an undisclosed chemical or mixture of various chemicals that possess a scent. With the exception of one Falsely Labeled Product,[28] Defendant does not disclose the identity of the fragrances it uses, listing only the generic term "fragrance" on its product label. Many synthetic fragrances are known to be allergens. As researchers have determined, "[c]ontact allergy to fragrance substances is frequent."[29]

### E. Customer Reviews Contradict Defendant's Representations that the Falsely Labeled Products are Hypoallergenic and Suitable for Sensitive Skin

52. Customer reviews of the Falsely Labeled Products on Amazon.com show that the Falsely Labeled Products contain allergens and irritate the skin or otherwise cause allergic symptoms.

53. The following is a small sample of customer reviews of Defendant's Falsely

---

[25] Lawrance, *CD01 Sodium Benzoate: An Important Allergen to Patch Test to – Is 5% in Petrolatum too Irritant?*, BRITISH SOCIETY FOR CUTANEOUS ALLERGY, Vol. 188, Issue Suppl. 4 (June 2023).

[26] Khan, *Facial Allergic Contact Dermatitis Caused by Caprylic/Capric Triglyceride in a Cosmetic Cream*, CONTACT DERMATITIS, Vol. 86, Issue 4, Page 310 (2022).

[27] Lazzarini, S., *Contact Allergy to Benzyl Alcohol and Isopropyl Palmitate, Ingredients of Topical Corticosteroid*, CONTACT DERMATITIS, Vol. 8, Issue 5, Page 349 (1982).

[28] Aveeno Baby Daily Moisture Wash & Shampoo.

[29] Johansen, J., *Novel Insights Into Contact Dermatitis*, JOURNAL OF ALLERGY AND CLINICAL IMMUNOLOGY, Vol. 149, Issue 4, Pages 1162-71 (Apr. 2022).

Labeled Products on Amazon.com that contradict Defendant's "hypoallergenic" and "sensitive skin" representations.



★☆☆☆☆ **It Break Out my Skin Beware of this Aveeno Body Wash!**
Reviewed in the United States on November 23, 2024
Style: Wash + Gel Cream | Size: 18 Fl Oz (Pack of 1) | Verified Purchase

I don't really write reviews but this time I needed too.. I am so dissapointed on this Aveeno Sensitive Skin Face Wash and Body Wash. I bought this because I have sensitive skin and I thought it is because for Babies, so I know it won't hurt my skin.
But it really break out my skin. Lot's of red spots on my back and chest, the red spots goes down to my thighs and legs and it is so itchy that I can't bear when it itch. I can't even sleep well because when it itch it wakes me up.. I told my husband that I want to see my Doctor in case the red spots on my body gets worse . So BEWARE of this Body Wash , especially to your Babies.

*Fig. 2: Customer Review of Aveeno Kids Sensitive Skin Face & Body Wash*

 janessa martinez

★☆☆☆☆ **Do not buy!**
Reviewed in the United States on April 8, 2023
Style: Wash + Gel Cream | Size: 18 Fl Oz (Pack of 1) | Verified Purchase

Used this on my son who's 4 yo last night and next morning he broke out all over his back! Not sure if I received a defective one but would never buy!



*Fig. 3: Customer Review of Aveeno Kids Sensitive Skin Face & Body Wash*

 Karsa.X

★☆☆☆☆ **Causes very bad rash**
Reviewed in the United States on June 4, 2022
Size: 1 Count (Pack of 1) | Verified Purchase

My baby doesn't have sensitive skin and not allergic to other baby lotions/wash, even the ones with oats in. However the first time I used it on baby's belly, it gives a very bad allergic rash in a few hours. I was so scared and called doctor's office. From the photo I sent in the doctor said it could be from irritation on skin. At that time I was not sure it is from the lotion. After several months I tried this lotion on a small area on baby skin. And right away it becomes red and bumpy. For several days that spot has small red bumps. We have used many other brands lotion and never had this problem. I am so angry at this product and I will never buy anything from aveeno again.

*Fig. 3: Customer Review of Aveeno Baby Daily Moisture Lotion*

14

 Steph

⭐☆☆☆☆  **IT'S SCENTED! NEWBORNS BEWARE**
Reviewed in the United States on August 16, 2023
Style: Baby Wash and Shampoo | **Verified Purchase**

This caused serious rashes all over my one month old baby. It's scented, but everything on the bottle says hypoallergenic and safe for sensitive skin. But that scent- not good for my newborn. Be careful. It smells nice, so I'll use it for myself I guess.



*Fig. 4: Customer Review of Aveeno Baby Daily Moisture Lotion*

 4evr MOM

⭐☆☆☆☆  **WARNING!!! allergic reaction and j&j's response**
Reviewed in the United States on July 19, 2023
Size: 33 Fl Oz (Pack of 1) | **Verified Purchase**

I trusted the labeling. It says lightly scented hypoallergenic and tear free. Hypoallergenic. Upon using this product, I had an allergic reaction. When I read the back of the label, it says one of the ingredients is "fragrance". I have never seen a hypoallergenic product with a fragrance in it. I called Johnson and Johnson at the phone number on the back of the product. I was told that I did not properly use the product, this product is only to be used by babies and not to be used by adults. I repeat, only the baby should be using this product. I suppose you put the bottle next to the infant and wait - FOUR YEARS!!! Sure you could wait three years, but then the child might eat the product before they apply it properly as instructed on the back of the label which, by the way, does not mention adults should not use this product. 😵

*Fig. 5: Customer Review of Aveeno Baby Moisture Wash & Shampoo*

### F. Defendant's Representations Are False, Deceptive, and Misleading

54.    Defendant's conduct deceived and/or was likely to deceive the public, including reasonable consumers.  Consumers were deceived into believing that the Falsely Labeled Products were hypoallergenic and suitable for sensitive skin, as labeled.

55.    Defendant's representations that the Falsely Labeled Products are hypoallergenic and suitable for sensitive skin were false, as described herein.

### G. Location of the Misrepresentations

56.    Defendant made the false, deceptive, and misleading representations, described herein, on the label of each Falsely Labeled Product.  *See* Exhibit A.

57.    Defendant repeated the false, deceptive, and misleading representations, described

15

herein, on the product pages for each Falsely Labeled Product on its website.

58.     Defendant repeated the false, deceptive, and misleading representations, described herein, on the product pages for each Falsely Labeled Product on the websites of other retailers.

59.     These misrepresentations were uniform and have actually been communicated to each Plaintiff and Class Member at every point of purchase and consumption.

**H.  Defendant Knew its Misrepresentations Were False**

60.     Defendant holds itself out to the public as a trusted expert in the area of hypoallergenic products and products for sensitive skin.

61.     Defendant knew what representations it made regarding the Falsely Labeled Products, as all representations appear on the label of each Falsely Labeled Product as well as on the product page for each Falsely Labeled Product.

62.     Defendant knew the ingredients of each Falsely Labeled Product.

63.     Defendant thus knew all facts demonstrating that its Falsely Labeled Products contain allergens and that these products were therefore falsely labeled as "hypoallergenic" and suitable for sensitive skin.

**I.   Defendant's Deceptive and Misleading Omissions**

64.     Defendant deceptively and misleadingly conceals other material facts about the Falsely Labeled Products, including:

a.     the true nature of the Falsely Labeled Products' ingredients;

b.     that the Falsely Labeled Products contain allergens;

c.     the concentration of each respective allergen in the Falsely Labeled Products;

d.     that the Falsely Labeled Products are not hypoallergenic;

16

e.      that the Falsely Labeled Products are not suitable for sensitive skin;

f.      that the Falsely Labeled Products are not what a reasonable consumer would consider to be hypoallergenic;

g.      that the Falsely Labeled Products are not what a reasonable consumer would consider suitable for sensitive skin;

h.      that the Falsely Labeled Products contain substances that a reasonable consumer would not expect in a product labeled as "hypoallergenic"; and

i.      that the Falsely Labeled Products contain substances that a reasonable consumer would not expect in a product labeled as suitable for sensitive skin.

65.    Plaintiffs and the Class Members are not at fault for failing to discovery Defendant's wrongs earlier and had no actual or presumptive knowledge of facts sufficient to put them on inquiry notice.

66.    Defendant concealed the identity of ingredients.  For example, Defendant adds "fragrance" to most of the Falsely Labeled Products,[30] but, with the exception of one of these products, does not identify what chemical or mixture of chemicals is used.  Many ingredients used as fragrances are known allergens.

67.    Defendant has not disclosed the concentration of each ingredient in the Falsely Labeled Products.

68.    To this day, Defendant continues to conceal and suppress the existence, true

---

[30] Kids Sensitive Skin Face & Body Wash, Kids Sensitive Skin Face & Body Gel Cream, Kids Sensitive Skin Bubble Bath, Baby Daily Moisture Cream with Prebiotic Oat, Coconut & Shea Butter, Aveeno Baby Sensitive Skin Bubble Bath with Oat Extract, Baby Daily Moisture 2-in-1 Wash & Shampoo, and Baby Daily Moisture Wash & Shampoo.

4915-9523-6177, v. 4

identity, nature, and concentration of the allergens in the Falsely Labeled Products.

69.    Similarly, to this day, Defendant continues to conceal and suppress the fact that the Falsely Labeled Products are not hypoallergenic or suitable for sensitive skin, as promised.

70.    Defendant makes additional representations on the product pages for the Falsely Labeled Products that further obscure the fact that the Falsely Labeled Products are not hypoallergenic or suitable for sensitive skin, including representations that the Falsely Labeled Products are "specially designed for kids' developing & sensitive skin," that the Falsely Labeled Products are "gentle," made with a "tear-free formula," and "suitable for all skin tones."

71.    Defendant fails to disclose, however, that its Falsely Labeled Products contain ingredients that are known allergens.

### J.    Defendant Intended Consumers to Rely on its Misrepresentations and Omissions

72.    As Defendant knows, consumers prefer skin care products that are hypoallergenic and suitable for sensitive skin.  As Defendant knows, consumers will pay a premium for skin care products that are hypoallergenic and suitable for sensitive skin or would not purchase these products at all unless they were hypoallergenic and suitable for sensitive skin, as advertised.

73.    Defendant's misleading affirmative statements—including that the Falsely Labeled Products are "hypoallergenic," suitable for "sensitive skin," "gentle," and "specially designed for kids' developing & sensitive skin," "suitable for all skin tones," and made with a "tear-free formula"—further obscured what Defendant failed to disclose.

74.    Defendant made the false, deceptive, and misleading representations and omissions, intending Plaintiffs and the Class Members to rely upon these representations and omissions in purchasing and using one or more of the Falsely Labeled Products.

75.    In making the false, misleading, and deceptive representations and omissions at

4915-9523-6177, v. 4

issue, Defendant knew and intended that consumers would purchase the Falsely Labeled Products when consumers would otherwise not purchase its products if they knew the truth.

76.    In making the false, misleading, and deceptive representations and omissions at issue, Defendant also knew and intended that consumers would pay a premium for products that are hypoallergenic and suitable for sensitive skin, furthering Defendant's interest of increasing sales of its Falsely Labeled Products.

**K.  Consumers Reasonably Relied on Defendant's Misrepresentations and Omissions**

77.    Consumers frequently rely on ingredient representations and information when making purchasing decisions, especially when purchasing personal care products.

78.    When Plaintiffs and the Class Members purchased the Falsely Labeled Products, Plaintiffs and the Class Members saw the false, misleading, and deceptive representations detailed above, and did not receive disclosure of the omitted facts, as detailed above.

79.    These misrepresentations were uniform and were communicated to Plaintiffs and every other member of the Classes at every point of purchase and consumption.

80.    Plaintiffs and the Class Members were among the intended recipients of Defendant's deceptive representations and omissions.

81.    Plaintiffs and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

82.    Defendant's false, misleading, and deceptive misrepresentations and omissions deceived and misled, and are likely to continue to deceive and mislead, Plaintiffs, the Class Members, reasonable consumers, and the general public.

83.    Defendant's misleading affirmative statements further obscured what it failed to disclose.  Defendant made the deceptive representations and omissions with the intent to induce

Plaintiffs and the Class Members to purchase the Falsely Labeled Products.

84.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making a purchasing decision.  The materiality of those representations and omissions also establishes causation between Defendant's conduct and the injuries sustained by Plaintiffs and the Class Members.

**L.  Defendant's Wrongful Conduct Caused Injuries to Plaintiffs and the Class Members**

85.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiffs and the Class Members in that they:

> a.     paid a sum of money for a product that was not as represented;
>
> b.     paid a premium price for a product that was not as represented;
>
> c.     were deprived the benefit of the bargain because the Falsely Labeled Products they purchased were different from what Defendant warranted;
>
> d.     were deprived the benefit of the bargain because the Falsely Labeled Products they purchased had less value than what Defendant represented;
>
> e.     did not receive a product consistent with the expectations created by Defendant for that product;
>
> f.     used (or caused their children to use) a substance that Plaintiffs and the Class Members did not expect or consent to;
>
> g.     used (or caused their children to use) a product that was not hypoallergenic;
>
> h.     used (or caused their children to use) a product that was not suitable for sensitive skin; and

       i.      used (or caused their children to use), without their knowing consent, a substance that is an allergen.

86.    Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiffs and the Class Members would not have been injured as listed above. Accordingly, Plaintiffs and the Class Members have suffered injury in fact as a result of Defendant's wrongful conduct.

87.    Plaintiffs and the Class Members each paid money for the Falsely Labeled Products but did not obtain the full value of the advertised products due to Defendant's misrepresentations and omissions. Plaintiffs and the Class Members purchased, purchased more of, or paid more for, the Falsely Labeled Products than they would have had they known the truth about the Falsely Labeled Products. Accordingly, Plaintiffs and the Class Members have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

## M. Defendant Benefitted from its Misleading and Deceptive Misrepresentations and Omissions

88.    As the intended, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant has been unjustly enriched through more sales of the Falsely Labeled Products and higher profits at the expense of Plaintiffs and the Class Members.

89.    As a direct and proximate result of its deception, Defendant also unfairly obtained other benefits, including the higher value associated with a "hypoallergenic" and "sensitive skin" brand and the resulting higher stock value, redirecting sales to it and away from its competitors, and increased sales of its other products.

## FEDERAL RULE OF CIVIL PROCEDURE 9(b) ALLEGATIONS

90.    Although Defendant is in the best position to know what content it placed on its

label, website, and other marketing and advertising for the Falsely Labeled Products during the relevant timeframe, and the knowledge that it had regarding the presence of allergens in the Falsely Labeled Products, which were marketed and sold as "hypoallergenic" and suitable for sensitive skin, Plaintiffs, the Class Members, and consumers, to the extent necessary, satisfy the requirements of Federal Rule of Civil Procedure 9(b) by alleging the following facts with particularity:

91.    **WHO**: Defendant represented on the Falsely Labeled Products' labeling, online, and their marketing and advertising of the Falsely Labeled Products that the Falsely Labeled Products are "hypoallergenic" and suitable for sensitive skin.

92.    **WHAT:** Defendant's conduct here was, and continues to be, deceptive and negligent because of its misrepresentations and omissions.  Thus, Defendant's conduct deceived Plaintiffs and the Class Members into believing that the Falsely Labeled Products were manufactured and sold with the represented nature and quality, *i.e.*, hypoallergenic and suitable for sensitive skin.  Defendant knew or should have known this information is material to reasonable consumers, including Plaintiffs and the Class Members in making their purchasing decisions, yet it continued to pervasively market the Falsely Labeled Products as possessing a nature and quality they do not have.

93.    **WHEN:** Defendant made material misrepresentations, false statements, and/or material omissions during the putative Class Period and at the time Plaintiffs and Class Members purchased the Falsely Labeled Products, prior to and at the time Plaintiffs and the Class Members made claims after realizing the Falsely Labeled Products contained allergens, and continuously throughout the applicable Class Period.

94.    **WHERE:** Defendant's marketing message was uniform and pervasive, carried

through false statements, misrepresentations, and/or omissions on the Falsely Labeled Products' labeling as well as on the websites of online retailers, including on Defendant's website.

95.     **HOW:** Defendant made false statements, misrepresentations, and/or material omissions regarding the Falsely Labeled Products being hypoallergenic and suitable for sensitive skin despite containing allergens.

96.     **WHY:** Defendant made the false statements, misrepresentations, and/or material omissions detailed herein for the express purpose of inducing Plaintiffs, the Class Members, and reasonable consumers to purchase and/or pay for the Falsely Labeled Products, the effect of which was that Defendant profited by selling the Falsely Labeled Products to consumers who otherwise would not have purchased those products.

97.     **INJURY:** Plaintiffs and the Class Members purchased, or otherwise paid more, for the Falsely Labeled Products when they otherwise would not have, absent Defendant's false statements, misrepresentations, and omissions.

## **CLASS ACTION ALLEGATIONS**

98.     Plaintiffs bring this action individually and as the representatives of all those similarly situated (collectively, the "Class Members"), pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), on behalf of the below-defined classes (collectively, the "Classes"):

> Nationwide Class:  All persons in the United States who purchased a Falsely Labeled Product for household use and not for resale.
>
> New Jersey Subclass:  All persons who, while in the state of New Jersey, purchased a Falsely Labeled Product for household use and not for resale.
>
> California Subclass:  All persons who, while in the state of California, purchased a Falsely Labeled Product for household use and not for resale.
>
> New York Subclass:  All persons who, while in the state of New York,

23

purchased a Falsely Labeled Product for household use and not for resale.

D.C. Subclass:   All persons who, while in the District of Columbia, purchased a Falsely Labeled Product for household use and not for resale.

99.     The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action, members of their staffs (including judicial clerks), and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest, and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel, and non-attorney employees of their firms; and (6) the legal representatives, successors, and assigns of any such excluded persons.

100.    This action is brought and may be properly maintained as a class action.  There is a well-defined community of interests in this litigation and Class Members are easily ascertainable.

101.    The Class Members are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Classes in a single action will provide substantial benefits to the parties and the Court.

102.    Questions of law and fact common to Plaintiffs and the Classes include, but are not limited to, the following:

      a.      Whether Defendant misrepresented and/or failed to disclose materials facts concerning the Falsely Labeled Products;

      b.      Whether Defendant made false, misleading, or deceptive statements of fact on the labeling of the Falsely Labeled Products;

c. Whether Defendant made false, misleading, or deceptive statements of fact in the advertising materials for the Falsely Labeled Products;

d. Whether Defendant's labeling and marketing materials for the Falsely Labeled Products are false, deceptive, and misleading based on Defendant's misrepresentations and omissions;

e. Whether Defendant's conduct in advertising and selling the Falsely Labeled Products constituted unlawful, unfair, and/or deceptive business practices;

f. Whether Defendant breached an express warranty created through the labeling and marketing of the Falsely Labeled Products;

g. Whether Defendant breached an implied warranty created through the labeling and marketing of the Falsely Labeled Products;

h. Whether Defendant violated the laws of New Jersey;

i. Whether Defendant violated the laws of California;

j. Whether Defendant violated the laws of New York;

k. Whether Defendant violated the laws of the District of Columbia;

l. Whether Plaintiffs and the Class Members are entitled to equitable and/or injunctive relief;

m. Whether Plaintiffs and the Class Members have sustained damage as a result of Defendant's unlawful conduct;

n. The proper measure of damages sustained by Plaintiffs and the Class Members; and

o. Whether Defendant was unjustly enriched by its unlawful practices.

103. Defendant engaged in a common course of conduct giving rise to the legal rights

sought to be enforced by Plaintiffs individually and on behalf of the other Class Members. Identical statutory violations and business practices and harms are involved.  Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

104.    Plaintiffs' claims are typical of those of the Class Members in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

105.    Plaintiffs will fairly and adequately represent and protect the interests of the Classes, have no interest incompatible with the interests of the Classes, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

106.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small such that, absent representative litigation, it would not be feasible for Class Members to redress the wrongs done to them.

107.    Questions of law and fact common to the Classes predominate over any questions affecting only individual Class Members.

108.    As a result of the foregoing, class treatment is appropriate.

109.    Plaintiffs reserve the right to revise each of the foregoing allegations based on facts learned through additional investigation and in discovery.

**COUNT I**
**Violations of New Jersey Consumer Fraud Act**
**N.J. Stat. §§ 56:8-1, *et seq.***
**(On behalf of Plaintiffs and the Nationwide Class and New Jersey Subclass)**

110.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

111.    The New Jersey Consumer Fraud Act ("NJCFA") prohibits any "act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false

26

pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." N.J. STAT. § 56:8-2.

112.    At all relevant times, Plaintiffs, members of the Classes, and Defendant were "persons" within the meaning of the NJCFA. *See* N.J. STAT. § 56:8-1(d).

113.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts it intended others to rely upon in connection with the sale of the Falsely Labeled Products, as defined by Section 56:8-1(c) of the New Jersey Statutes, in violation of Section 56:8-2 of the New Jersey Statutes as alleged herein.

114.    Defendant's misrepresentations and omissions in the sale of the Falsely Labeled Products as alleged herein were acts or practices in the conduct of trade or commerce.

115.    Defendant's misrepresentations and omissions in the sale of the Falsely Labeled Products as alleged herein impact the public interest.

116.    Defendant's misrepresentations and omissions in the sale of the Falsely Labeled Products as alleged herein were unfair because they inequitably enriched Defendant at the expense of Plaintiffs and members of the Nationwide Class and New Jersey Subclass.

117.    Defendant's misrepresentations and omissions in the sale of the Falsely Labeled Products as alleged herein were unfair because they offended public policy and were so oppressive that Plaintiffs and members of the Nationwide Class and New Jersey Subclass had little alternative but to submit, which caused them substantial injury.

118.    Defendant's misrepresentations and omissions in the sale of the Falsely Labeled Products as alleged herein were unfair in that they violated the well-established public policies of

protecting consumers from avoidable dangers and that the manufacturer of a product is responsible for ensuring that the product is fit for human use by the product's intended users.

119.    As alleged herein, Plaintiffs and members of the Nationwide Class and New Jersey Subclass have suffered ascertainable loss as a direct and proximate result of Defendant's conduct.

120.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which it would not have received if it had not engaged in the violations alleged herein.

121.    As a result, Plaintiffs and members of the Nationwide Class and New Jersey Subclass seek relief, including but not limited to, refunds of the amounts they paid to Defendant for the Falsely Labeled Products, injunctive relief, damages, treble damages, attorneys' fees, and costs pursuant to Sections 56:8-2.11 and 56:8-19 of the New Jersey Statutes.

<u>**COUNT II**</u>
**Violations of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On behalf of Plaintiffs Beyer and Pitre and the California Subclass)**

122.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

123.    The Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.

**Fraudulent**

124.    Defendant's representations that the Falsely Labeled Products are "hypoallergenic" and suitable for sensitive skin are likely to deceive reasonable consumers and the public.

125.    Defendant's material omissions regarding (a) the nature of the Falsely Labeled Products' ingredients; (b) that the Falsely Labeled Products contain chemicals known to be allergens, sensitizers, and/or irritants; (c) that the Falsely Labeled Products are not hypoallergenic

or suitable for sensitive skin; and (d) that the Falsely Labeled Products contain chemicals that a reasonable consumer would not expect in a product labeled "hypoallergenic" or suitable for sensitive skin.

**Unlawful**

126.    Defendant's misrepresentations and omissions, as alleged herein, violate at least the following laws:

        a.    The Consumers Legal Remedies Act, California Business & Professions Code §§ 1750, *et seq.*;

        b.    The False Advertising Law, California Business & Professions Code §§ 17500, *et seq.*; and

        c.    The New Jersey Consumer Fraud Act, New Jersey Statute § 56:8-2.

**Unfair**

127.    Defendant committed unfair practices by marketing and selling the Falsely Labeled Products as "hypoallergenic" and suitable for sensitive skin, which rendered the Falsely Labeled Products altered and misbranded.

128.    Defendant's conduct with respect to the labeling, marketing, and sale of the Falsely Labeled Products is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of Defendant's conduct, if any, does not outweigh the gravity of the harm to its victims.

129.    Defendant's conduct with respect to the labeling, marketing, and sale of the Falsely Labeled Products is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including but not limited to, California's False Advertising Law.

4915-9523-6177, v. 4

130.    Defendant's conduct with respect to the labeling, marketing, and sale of the Falsely Labeled Products is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one that consumers, themselves, can reasonably avoid.

131.    Defendant was obligated to not represent the Falsely Labeled Products as hypoallergenic or suitable for sensitive skin because Defendant knew or should have known (a) the nature of the Falsely Labeled Products' ingredients; (b) that the Falsely Labeled Products contain chemicals known to be allergens, sensitizers, and/or irritants; (c) that the Falsely Labeled Products are not hypoallergenic or suitable for sensitive skin; and (d) that the Falsely Labeled Products contain chemicals that a reasonable consumer would not expect in a product labeled "hypoallergenic" or suitable for sensitive skin.

132.    Plaintiffs Beyer and Pitre and members of the California Subclass relied on representations made by Defendant on labeling and in marketing materials for the Falsely Labeled Products when making their purchasing decisions.  If Plaintiffs and the Class Members had known (a) the nature of the Falsely Labeled Products' ingredients; (b) that the Falsely Labeled Products contain chemicals known to be allergens, sensitizers, and/or irritants; (c) that the Falsely Labeled Products are not hypoallergenic or suitable for sensitive skin; and (d) that the Falsely Labeled Products contain chemicals that a reasonable consumer would not expect in a product labeled "hypoallergenic" or suitable for sensitive skin, they would not have purchased the Falsely Labeled Products.

133.    In accordance with California Business & Professions Code § 17203, Plaintiffs Beyer and Pitre and members of the California Subclass seek an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to recall all

units of the Falsely Labeled Products labeled as "hypoallergenic" or suitable for sensitive skin.

134.    On behalf of themselves, Plaintiffs Beyer and Pitre and members of the California Subclass also seek an order for the restitution of all monies from the sale of the Falsely Labeled Products, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

### COUNT III
**Violations of California's False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500,** *et seq.*
**(On behalf of Plaintiffs Beyer and Pitre and the California Subclass)**

135.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

136.    California's False Advertising Law prohibits any statement or omission in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code § 17500.

137.    As alleged herein, Defendant's material misrepresentations that the Falsely Labeled Products are hypoallergenic and suitable for sensitive skin are likely to deceive the public.

138.    Further, Defendant's material omissions concerning (a) the nature of the Falsely Labeled Products' ingredients; (b) that the Falsely Labeled Products contain chemicals known to be allergens, sensitizers, and/or irritants; (c) that the Falsely Labeled Products are not hypoallergenic or suitable for sensitive skin; and (d) that the Falsely Labeled Products contain chemicals that a reasonable consumer would not expect in a product labeled "hypoallergenic" or suitable for sensitive skin are likely to deceive the public.

139.    Defendant knew or should have known (a) the nature of the Falsely Labeled Products' ingredients; (b) that the Falsely Labeled Products contain chemicals known to be allergens, sensitizers, and/or irritants; (c) that the Falsely Labeled Products are not hypoallergenic or suitable for sensitive skin; and (d) that the Falsely Labeled Products contain chemicals that a

reasonable consumer would not expect in a product labeled "hypoallergenic" or suitable for sensitive skin.

140.    Defendant intended to deceive reasonable consumers and the public by representing that the Falsely Labeled Products are hypoallergenic and suitable for sensitive skin despite knowing or being in a position in which they should have known (a) the nature of the Falsely Labeled Products' ingredients; (b) that the Falsely Labeled Products contain chemicals known to be allergens, sensitizers, and/or irritants; (c) that the Falsely Labeled Products are not hypoallergenic or suitable for sensitive skin; and (d) that the Falsely Labeled Products contain chemicals that a reasonable consumer would not expect in a product labeled "hypoallergenic" or suitable for sensitive skin.

141.    Defendant had a duty to not label, market, and sell the Falsely Labeled Products as "hypoallergenic" and suitable for sensitive skin, and by labeling, marketing, and selling the Falsely Labeled Products as "hypoallergenic" and suitable for sensitive skin, misled consumers.

142.    Plaintiffs Beyer and Pitre and members of the California Subclass would not have purchased the Falsely Labeled Products if Defendant had disclosed that the Falsely Labeled Products are not hypoallergenic and not suitable for sensitive skin.

143.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

144.    Plaintiffs Beyer and Pitre and members of the California Subclass are entitled to injunctive and equitable relief as well as restitution in the amount they spent on the Falsely Labeled Products.

**COUNT IV**
**Violations of California's Consumers Legal Remedies Act**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On behalf of Plaintiffs Beyer and Pitre and the California Subclass)**

145.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

146.    Plaintiffs Beyer and Pitre and members of the California Subclass are "consumers," as that term is defined by California Civil Code § 1761(d).

147.    The Falsely Labeled Products are "goods," as that term is defined in California Civil Code § 1761(a).

148.    Plaintiffs Beyer and Pitre, each member of the California Subclass, and Defendant are each a "person" as that term is defined in California Civil Code § 1761(c).

149.    Plaintiff Beyer's, Plaintiff Pitre's, and each member of the California Subclass's purchases of the Falsely Labeled Products constituted a "transaction" as that term is defined in California Civil Code § 1761(e).

150.    Defendant's conduct alleged herein violates the following provisions of California's Consumers Legal Remedies Act ("CLRA"):

    a.    California Civil Code § 1770(a)(7) by knowingly, recklessly, and/or intentionally representing that the Falsely Labeled Products are of a particular standard, quality, or grade—*i.e.*, that they are hypoallergenic and suitable for sensitive skin—when they were of another;

    b.    California Civil Code § 1770(a)(5) by failing to disclose (a) the nature of the Falsely Labeled Products' ingredients; (b) that the Falsely Labeled Products contain chemicals known to be allergens, sensitizers, and/or irritants; (c) that the Falsely Labeled Products are not hypoallergenic or suitable for sensitive skin; and (d) that the Falsely Labeled Products contain chemicals that a reasonable consumer would not expect in a product labeled

33

"hypoallergenic" or suitable for sensitive skin; and

c.    California Civil Code § 1770(a)(9) by knowingly, recklessly, and/or intentionally advertising the Falsely Labeled Products with intent not to sell them as advertised.

151.    The misrepresentations and omissions were material as reasonable consumers—such as Plaintiffs Beyer and Pitre and each member of the California Subclass—consider the nature of a product's ingredients; whether a product contains chemicals known to be allergens, sensitizers, and/or irritants; whether a product is hypoallergenic and suitable for sensitive skin; and whether a product contains chemicals that a reasonable consumer would not expect in a product labeled "hypoallergenic" or suitable for sensitive skin important in determining whether to purchase a product.

152.    Defendant was obligated not to represent the Falsely Labeled Products as hypoallergenic or suitable for sensitive skin because Defendant knew or should have known (a) the nature of the Falsely Labeled Products' ingredients; (b) that the Falsely Labeled Products contain chemicals known to be allergens, sensitizers, and/or irritants; (c) that the Falsely Labeled Products are not hypoallergenic or suitable for sensitive skin; and (d) that the Falsely Labeled Products contain chemicals that a reasonable consumer would not expect in a product labeled "hypoallergenic" or suitable for sensitive skin.

153.    As a direct and proximate result of these violations, Plaintiffs Beyer and Pitre and members of the California Subclass have been harmed, and such harm will continue unless and until Defendant are enjoined from using the misleading labeling and marketing materials described herein in any matter in connection with the advertising and sale of the Falsely Labeled Products.

4915-9523-6177, v. 4

## COUNT V
### Violations of New York General Business Law § 349
### (On behalf of Plaintiff Wright and the New York Subclass)

154.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

155.    Plaintiff Wright brings this claim individually and on behalf of the New York Subclass against Defendant.

156.    New York General Business Law Section 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

157.    In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York General Business Law § 349.

158.    Plaintiff Wright and the members of the New York Subclass are consumers who purchased the Falsely Labeled Products from Defendant for their personal use.

159.    By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices.  Defendant intentionally concealed and omitted materials facts regarding the true nature of the Falsely Labeled Products.

160.    The foregoing deceptive acts and practices were directed at consumers.

161.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the Falsely Labeled Products to induce consumers to purchase the same.

162.    By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York General Business Law § 349.

163.    Defendant's actions are the direct, foreseeable, and proximate cause of the damages Plaintiff Wright and the members of the New York Subclass have sustained from having paid for

and used the Falsely Labeled Products.

164.    As a result of Defendant's violations, Plaintiff Wright and the members of the New York Subclass have suffered damages and an injury in fact.

165.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff Wright and the members of the New York Subclass are entitled to monetary, statutory, compensatory, treble, and putative damages, restitution, and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

166.    Plaintiff Wright and the members of the New York Subclass also seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable.

167.    An award of punitive damages is appropriate because Defendant's conduct showed malice, motive, and the reckless disregard of the truth.

<u>COUNT VI</u>
**Violations of New York General Business Law § 350**
**(On behalf of Plaintiff Wright and the New York Subclass)**

168.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

169.    New York General Business Law Section 350 prohibits false advertising in the conduct of any business, trade, or commerce.

170.    The term "false advertising" under Section 350-a(1) of the New York General Business Laws "means advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

171.    Based on the foregoing, Defendant engaged in consumer-oriented conduct that is deceptive or misleading in a material way that constitutes false advertising in violation of New York General Business Law § 350.

4915-9523-6177, v. 4

172.    Defendant's false, misleading, and deceptive statements and misrepresentations of fact were and are directed towards consumers.

173.    Defendant's false, misleading, and deceptive statements and representations of fact and omissions were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

174.    Defendant's false, misleading, and deceptive statements and representations of fact and omissions have resulted in consumer injury or harm to the public interest.

175.    As a result of Defendant's false, misleading, and deceptive statements and representations of fact and omissions, Plaintiff Wright and members of the New York Subclass have suffered and continue to suffer economic injury.

176.    As a result of Defendant's recurring, unlawful deceptive acts and practices, Plaintiff Wright and the members of the New York Subclass are entitled to monetary, statutory, compensatory, treble, and putative damages, restitution, and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

177.    Plaintiff Wright and the members of the New York Subclass also seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable.

178.    An award of punitive damages is appropriate because Defendant's conduct showed malice, motive, and the reckless disregard of the truth.

## COUNT VII
### Violation of the Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et seq.*
### (On Behalf of Plaintiff Cox and the D.C. Subclass)

179.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

180.    The D.C. Consumer Protection Procedures Act ("CPPA") is a remedial statute that

is to be broadly construed. It establishes "an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District of Columbia." D.C. Code § 28–3901(c). CPPA Section 28–3904 is explicit that a violation occurs regardless of "whether or not any consumer is in fact misled, deceived, or damaged" by the unlawful practice.

181.    The CPPA prohibits unlawful trade practices in connection with the offer, sale, advertisement, and supply of consumer goods and services. D.C. Code § 28–3904.

182.    The Falsely Labeled Products that Defendant markets and sells to consumers are sold for personal, household, or family purposes and, therefore, are consumer goods.

183.    Defendant, in the ordinary course of business, offers to sell consumer goods and, therefore, is a merchant. D.C. Code § 28–3901(a)(3).

184.    Defendant's misrepresentations and omissions concerning the Falsely Labeled Products, as described herein, is an unlawful trade practice that violates the CPPA, D.C. Code § 28–3904(h).

185.    Because the presence of chemicals known to be allergens, sensitizers, and/or irritants is a material fact to consumers deciding whether to buy a hypoallergenic skin care product, Defendant engaged in unfair and/or deceptive trade practices by "misrepresent[ing] . . . a material fact which has a tendency to mislead," D.C. Code § 28–3904(e), "fail[ing] to state a material fact" and "such failure tends to mislead," D.C. Code § 28–3904(f), "us[ing] innuendo or ambiguity as to a material fact, which has a tendency to mislead," D.C. Code § 28–3904(f-1), and/or "mak[ing] false or misleading representations of fact concerning . . . the price in comparison to price of competitors or one's own price at a past or future time," D.C. Code § 28–3904(j).

186.    Defendant's deceptive misrepresentations and omissions concerning the Falsely

Labeled Products, as described herein, violated Plaintiff Cox and each member of the D.C. Subclass's individual statutory right to truthful information from Defendant about the nature and quality of the Falsely Labeled Products in the District of Columbia.

187.    Plaintiff Cox and the members of the D.C. Subclass suffered actual injuries as a result of Defendant's unfair and deceptive practices in the amount they spent on the Falsely Labeled Products.

188.    Each purchase of a Falsely Labeled Product constitutes a violation of the CPPA.

189.    Given these practices, Plaintiff Cox and the members of the D.C. Subclass are also entitled to injunctive relief.  D.C. Code § 28–3905(k)(2)(D).

**COUNT VIII**
**Breach of Implied Warranty**
**(On Behalf of Plaintiffs and the Classes)**

190.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

191.    Plaintiffs assert this claim under New Jersey law or, in the alternative, under the laws of the states in which they made their purchases (New Jersey, California, New York, and D.C.).[31]

192.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Falsely Labeled Products, impliedly warranted that the Falsely Labeled Products were specially formulated to be hypoallergenic and suitable to be used by those with sensitive skin, when that is not true.

193.    Defendant breached its warranty implied in the contract for sale of the Falsely Labeled Products because they could not pass without objection in the trade under the contract

---

[31] The elements of a breach of implied warranty claim are the same in these and all states.

description, and because the Falsely Labeled Products could not be used for the specific purpose of being a skin care product that is hypoallergenic and suitable for sensitive skin.

194.    The Falsely Labeled Products were not adequately contained, packaged, and labeled as per Defendant's contract with Plaintiffs and the members of the Classes, and the Falsely Labeled Products do not conform to the implied affirmations of fact made on their respective marketing and labeling.  As a result, Plaintiffs and the members of the Classes did not receive the goods as impliedly warranted by Defendant to be merchantable.

195.    Plaintiffs and members of the Classes purchased the Falsely Labeled Products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

196.    The Falsely Labeled Products were defective when they left the exclusive control of Defendant.

197.    Plaintiffs and members of the Classes did not receive the goods as warranted.

198.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and members of the Classes have been injured and harmed because they would not have purchased the Falsely Labeled Products on the same terms if they knew that the Falsely Labeled Products were not hypoallergenic or suitable for sensitive skin and because the Falsely Labeled Products do not have the characteristics, uses, or benefits as promised by Defendant.

199.    Plaintiffs seek all available relief under this claim.

### COUNT IX
**Breach of Express Warranty**
**(On Behalf of Plaintiffs and the Classes)**

200.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

201.    Plaintiffs assert this claim under New Jersey law or, in the alternative, under the

laws of the states in which they made their purchases (New Jersey, California, New York, and D.C.).[32]

202.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Falsely Labeled Products expressly warranted that the Falsely Labeled Products were hypoallergenic and suitable for sensitive skin, when that is not true.  The warranty was part of the description of goods and the bargain upon which the goods were offered for sale.

203.    By falsely representing that the Falsely Labeled Products were hypoallergenic and suitable for sensitive skin, Defendant breached its express warranty.

204.    Plaintiffs and members of the Classes did not receive the goods as warranted.

205.    As a direct and proximate cause of Defendant's breach of the express warranty, Plaintiffs and members of the classes have been injured and harmed because they would not have purchased the Falsely Labeled Products on the same terms if they knew that the Falsely Labeled Products were not hypoallergenic or suitable for sensitive skin and because the Falsely Labeled Products do not have the characteristics, uses, or benefits as promised by Defendant.

206.    Plaintiffs seek all available relief under this claim.

## COUNT X
### Fraud by Omission & Intentional Misrepresentation
### (On Behalf of Plaintiffs and the Classes)

207.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

208.    Plaintiffs assert this claim under New Jersey law or, in the alternative, under the laws of the states in which they made their purchases (New Jersey, California, New York, and

---

[32] The elements of a breach of express warranty claim are the same in these and all states.

D.C.).[33]

209.    This claim is based on fraudulent misrepresentations and omissions concerning the qualities of the Falsely Labeled Products and the fact that they are not hypoallergenic or suitable for sensitive skin, as alleged herein.

210.    Defendant failed to disclose (a) the nature of the Falsely Labeled Products' ingredients; (b) that the Falsely Labeled Products contain chemicals known to be allergens, sensitizers, and/or irritants; (c) that the Falsely Labeled Products are not hypoallergenic or suitable for sensitive skin; and (d) that the Falsely Labeled Products contain chemicals that a reasonable consumer would not expect in a product labeled "hypoallergenic" or suitable for sensitive skin.

211.    Defendant made the false and misleading representations and omissions alleged herein with knowledge of their falsehood.

212.    Defendant continued to sell the Falsely Labeled Products using the false and misleading representations and omissions alleged herein to unsuspecting consumers.

213.    Plaintiffs and the Class Members reasonably and justifiably relied on the false and misleading representations and omissions made by Defendant.

214.    Defendant intended to induce and actually induced Plaintiffs and the Class Members to purchase the Falsely Labeled Products through the use of their false and misleading representations and omissions.

215.    The fraudulent actions of Defendant caused injury to Plaintiffs and the Class Members, who are entitled to actual damages and punitive damages.

216.    Plaintiffs and the Class Members seek all relief available under this cause of action.

---

[33] The elements of a fraud by omission and intentional misrepresentation claim are the same in these and all states.

<h1 style="text-align:center">COUNT XI</h1>
<strong>Unjust Enrichment</strong><br><strong>(On Behalf of Plaintiffs and the Classes)</strong>

217.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

218.    Plaintiffs assert this claim under New Jersey law or, in the alternative, under the laws of the states in which they made their purchases (New Jersey, California, New York, and D.C.).[34]

219.    To the extent required, Plaintiffs assert this claim in the alternative to other legal claims, as permitted by Rule 8 of the Federal Rules of Civil Procedure.

220.    Plaintiffs and the Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money the Plaintiffs and the Class Members paid to Defendant.

221.    Defendant knew of the benefit conferred on them by Plaintiffs and the Class Members.

222.    Defendant has been unjustly enriched in retaining the revenues derived from purchases of the Falsely Labeled Products made by Plaintiffs and the Class Members.  The retention of such revenues by Defendant is unjust and inequitable because Defendant misrepresented that the Falsely Labeled Products were hypoallergenic and suitable for sensitive skin.

223.    Defendant's misrepresentations and omissions, as alleged herein, caused injuries to Plaintiffs and the Class Members because they would not have purchased the Falsely Labeled

---

[34] The elements of an unjust enrichment claim are the same in these and all states.

4915-9523-6177, v. 4

Products or would have paid less for it if they knew the Falsely Labeled Products were not hypoallergenic or suitable for sensitive skin.

224.    Defendant accepted and retained the benefit in the amount of the gross revenues derived from sales of the Falsely Labeled Products to Plaintiffs and the Class Members.

225.    Defendant has profited by retaining the benefit under circumstances that would make it unjust for Defendant to retain the benefit.

226.    Plaintiffs and the Class Members are, therefore, entitled to restitution in the form of the revenues Defendant derived from their sale of the Falsely Labeled Products to Plaintiffs and the Class Members.

227.    As a direct and proximate result of Defendant's actions, Plaintiffs and the Class Members have suffered in an amount to be proven at trial.

228.    Plaintiffs and the Class Members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

229.    Plaintiffs and the Class Members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the profits obtained by Defendant from the sale of the Falsely Labeled Products to Plaintiffs and the Class Members as a result of their unjust conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and others similarly situated, respectfully request that the Court:

a.    Certify the proposed Classes;

b.    Appoint Plaintiffs as class representatives and Plaintiffs' counsel as class counsel for each of the Classes;

4915-9523-6177, v. 4

c.      Temporarily and permanently enjoin Defendant from selling any unit of the Falsely Labeled Products with its current formula and labeling that states it is hypoallergenic and suitable for sensitive skin;

d.      Issue an order declaring Defendant's conduct violates the statutes referenced herein;

e.      Issue an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

f.      Award actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or a jury;

g.      Award prejudgment interest on all amounts awarded;

h.      Issue an order of restitution and all other forms of equitable monetary relief;

i.      Issue an order awarding Plaintiffs and the Classes their reasonable attorneys' fees, expenses, and costs.

## **JURY DEMAND**

Plaintiffs request a trial by jury of all claims so triable.

Dated: June 26, 2025

By: _____
Martin P. Schrama
Stefanie Colella-Walsh
**STARK & STARK PC**
100 American Metro Blvd.
Hamilton, NJ 08619
T: (609) 895-7261
mschrama@stark-stark.com
scolellawalsh@stark-stark.com

Matthew J. Langley
Christopher M. Nienhaus
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue

4915-9523-6177, v. 4

Chicago, Illinois 60614
t: 312-576-3024
matt@almeidalawgroup.com
chris@almeidalawgroup.com

*Counsel for Plaintiffs & the Proposed Classes*

4915-9523-6177, v. 4

## <u>LOCAL RULE 11.2 CERTIFICATION</u>

Pursuant to Local Rule 11.2, the undersigned states and otherwise affirms that the matters put in controversy by the filing of this putative class action complaint—namely, the alleged false, deceptive, and misleading labeling and marketing of Defendant Kenvue Brands LLC's Aveeno Kids and Aveeno Baby skin care products as "hypoallergenic" and suitable for sensitive skin—is not the subject of any other action currently pending in any state or federal court.

_____

Martin P. Schrama
