<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| CHEYENNE BEYER, YOLANDA PITRE, CAMERON GASKINS, LATONYA WRIGHT and DAVONNA COX, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KENVUE BRANDS LLC,<br><br>Defendant. | Civil Action No. 25-12180 (SDW) (AME)<br><br>**OPINION**<br><br>May 19, 2026 |

**WIGENTON**, District Judge.

Before this Court is Defendant Kenvue Brands LLC's ("Defendant") Motion to Dismiss (D.E. 21 ("Motion")) Plaintiffs Cheyenne Beyer, Yolanda Pitre, Cameron Gaskins, Latonya Wright and Davonna Cox's (collectively, "Plaintiffs") Amended Class Action Complaint (D.E. 16 ("Am. Compl.")) for failure to state a claim pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the Motion to Dismiss is **GRANTED**.

## I.   <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

This putative class action involves allegations that Defendant has unlawfully misled consumers into purchasing certain Aveeno Kids and Aveeno Baby skin care products by misrepresenting the products as "hypoallergenic" and suitable for "sensitive skin." According to Plaintiffs, Defendant launched a marketing scheme for its Aveeno Kids and Aveeno Baby skin

care products[1] (the "Products") "looking to appeal to consumers who are willing to pay a premium for products that are truly hypoallergenic, gentle, and suitable for irritable and sensitive skin." (Am. Compl. ¶ 2.) Plaintiffs state that nearly all of Defendant's Aveeno Kids and Baby brand skin care products are labeled and marketed as "hypoallergenic." (*Id.*) The products also include additional labeling indicating to consumers that the products are suitable for sensitive skin by using phrases such as "sensitive skin," "gentle," "tear-free," and "suitable for all skin tones." (*Id.*)

Plaintiffs allege that these representations are false and deceptive. (*Id.* ¶ 3.) Specifically, Plaintiffs allege that Defendant's skin care products contain allergens in an amount that can be reasonably expected to induce an allergic reaction or skin irritation in a significant number of people.[2] (*Id.*) Thus, Plaintiffs claim that consumers have been harmed by "Defendant's false, deceptive, and misleading labeling of its skin care products because Defendant's misrepresentations induced Plaintiffs to purchase, purchase more of, and pay more for, these products than they would have had they known that the products were not hypoallergenic." (*Id.* ¶ 5.)

Each individual Plaintiff offers similar allegations with respect to their reliance on Defendant's alleged misrepresentations. (*See Id.* ¶¶ 8–27.) For example, each Plaintiff alleges that they purchased one of the Products and specifically purchased the Product because it was labeled "hypoallergenic" and suitable for "sensitive skin." (*Id.*) Plaintiffs further allege that they

---

[1] The alleged falsely labeled products are Aveeno: Kids Sensitive Skin Face & Body Wash, Kids Sensitive Skin Face & Body Gel Cream, Kids Sensitive Skin Bubble Bath, Daily Moisture Healthy Start Newborn Balm, Baby Daily Moisture Cream with Prebiotic Oat, Coconut & Shea Butter, Baby Daily Moisture Lotion, Baby Eczema Therapy Moisturizing Cream, Baby Daily Moisture Healthy Start Newborn Wash, Baby Sensitive Skin Bubble Bath with Oat Extract, Baby Daily Moisture 2-in-1 Wash & Shampoo, Baby Daily Moisture Wash & Shampoo, and Baby Cleansing Therapy Moisturizing Wash. (*Id.* a 4.)

[2] Plaintiffs define a "hypoallergenic" product as one that "does not contain skin allergens in an amount that can be reasonably expected to induce an allergic response in a significant number of people." (*Id*. ¶ 38) Similarly, Plaintiffs define a product that is suitable for "sensitive skin" as one that does not contain an ingredient in an amount that can be reasonably expected to induce skin irritation in a significant number of people." (*Id*. ¶ 40)

2

would not have purchased the respective Product if they knew that it contained ingredients that may cause an allergic reaction. (*Id.*) Additionally, each Plaintiff's child subsequently experienced an allergic reaction after using the Product. (*Id.*)

Based on the foregoing, Plaintiffs filed their initial complaint on June 26, 2025. (D.E. 1.) On October 26, 2025, Plaintiffs filed their Amended Complaint asserting claims for: (1) violations of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8–2 *et seq*. ("NJCFA") on behalf of Plaintiffs and the putative Nationwide Class and New Jersey Subclass; (2) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, on behalf of Plaintiffs Beyer and Pitre and the California Subclass; (3) violations of California's False Advertising Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, on behalf of Plaintiffs Beyer and Pitre and the California Subclass; (4) violations of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, on behalf of Plaintiffs Beyer and Pitre and the California Subclass; (5) violations of N.Y. Gen. Bus. Law § 349, *et seq.*, on behalf of Plaintiff Wright and the putative New York Subclass; (6) violations of N.Y. Gen. Bus. Law § 350, *et seq.*, on behalf of Plaintiff Wright and the putative New York Subclass; (7) violation of the Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et seq*, on behalf of Plaintiff Cox and the Washington D.C. Subclass. In addition,  without specifying under which state's law they are brought, the Amended Complaint also contains a number of state law claims on behalf of all Plaintiffs and the putative class: (1) breach of implied warranty (Count VIII); (2) breach of express warranty (Count IX); and (3) unjust enrichment (Count X).  Defendant filed the instant motion to dismiss on November 14, 2025.  (D.E. 21.)  The parties timely completed briefing.

**LEGAL STANDARD**

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer*, 605 F.3d at 229. Determining whether a complaint's allegations are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[L]abels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555.

A motion to dismiss for lack of standing is properly brought pursuant to Rule 12(b)(1), because standing is a matter of jurisdiction. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citing *St. Thomas-St. John Hotel & Tourism Ass'n v. Gov't of the U.S. V.I.*, 218 F.3d 232, 240 (3d Cir. 2000) ("The issue of standing is jurisdictional"). A district court considering a Rule 12(b)(1) motion must first determine whether the motion presents a facial or factual attack, as that distinction determines how the pleading is reviewed. *Long v. Southeastern Pa. Transp.*

4

*Auth.*, 903 F.3d 312, 320 (3d Cir. 2018). A facial challenge to subject-matter jurisdiction "considers a claim on its face and asserts that it is insufficient to invoke the subject-matter jurisdiction of the court because, for example, it does not present a question of federal law or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present." *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). In contrast, a factual challenge "is an argument that there is no subject matter jurisdiction because the facts of the case ... do not support the asserted jurisdiction." *Id.*

A facial attack "only consider[s] the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In considering a factual challenge to subject-matter jurisdiction, the court "may look beyond the pleadings to ascertain the facts." *Constitution Party of Pennsylvania*, 757 F.3d at 348. If, however, the defendant mounts a factual attack by contesting the truth of the jurisdictional allegations, then the court "need not treat the allegations as true, and a plenary trial is held to resolve any material factual disputes." *Long*, 903 F.3d at 320.

Importantly, when a defendant challenges the court's exercise of subject matter jurisdiction, the plaintiff has the burden of proving jurisdiction to survive the motion. *See Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 158 (3d Cir. 1995). Additionally, "[i]n the class action context, the standing inquiry focuses solely on the class representatives." *In re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig. (Valsartan II)*, No. 2875, 2021 WL 100204, at *5 (D.N.J. Jan. 12, 2021) (citing *Mielo v. Steak'n Shake Operations, Inc.*, 897 F.3d 467, 478 (3d Cir. 2018)).

II.  **DISCUSSION**

A. **Article III Standing**

This Court will first address Defendant's argument that Plaintiffs lack Article III standing to pursue their claims.[3]  Article III of the Constitution limits federal courts to adjudicating actual "cases" or "controversies," requiring a plaintiff to establish standing for each claim and each form of relief sought.  *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017).  To establish Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  At the pleading stage, Plaintiffs must clearly allege facts demonstrating each element.  *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Defendant argues that Plaintiffs lack Article III standing to pursue their claims because Plaintiffs fail to plead a cognizable economic injury.  The Third Circuit has identified three avenues for pleading economic injury.  *See generally In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practice & Liability Litigation*, 903 F.3d 278 (3d Cir. 2018).  First, under the alternative product theory, "a plaintiff might successfully plead economic injury by alleging that, absent the defendant's conduct, she would have purchased an alternative product that was less expensive." *Id.*  Second, under the premium price theory, "a plaintiff may plead economic injury by alleging that the defendant unlawfully advertised its product as being 'superior' to others." *Id.* at 283.  Third, under the benefit of the bargain theory, "a plaintiff might successfully plead an economic injury by alleging that she bargained for a product worth a given value but received a product worth less than that value." *Id.*

---

[3] "[W]hen a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Dickerson v. Bank of Am., N.A.*, No. 12-3922, 2013 WL 1163483, at *2 (D.N.J. Mar. 19, 2013) (quoting *In re Corestates Tr. Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd*, 39 F.3d 61 (3d Cir. 1994)).

### i.   Premium Price

Plaintiffs contend that they have pled an economic injury under the premium price theory. Plaintiffs allege that consumers are willing to pay a premium for products that are truly hypoallergenic and suitable for sensitive skin and Defendant falsely labeled and marketed its Aveeno Kids and Aveeno Baby skin care products as such.   Plaintiffs further allege that Defendant's misrepresentations induced Plaintiffs to pay more for these products than they would have had they known that the products were not hypoallergenic or suitable for sensitive skin.

A premium price theory of injury is premised on "a plaintiff alleging that the defendant unlawfully advertised the contested product as being superior to others, which allows the court to calculate the financial injury by determining the 'premium' that a plaintiff was induced to pay by unlawful advertisements." *In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 225 (D.N.J. 2022) (citing *In re Johnson & Johnson*, 903 F.3d at 283).  Also, to prevail on a premium price theory, a plaintiff must show the "defendant's misrepresentations or omissions caused that plaintiff to overpay for a product." *Serrano v. Campbell Soup Co.*, 773 F. Supp. 3d 127, 146 (D.N.J. 2025) (internal citations omitted).  At the pleading stage, a plaintiff is not required to allege the exact value of her economic injury but instead must allege facts to "permit a factfinder to determine that [she] suffered at least some economic injury." *Id.* (citing *In re Johnson & Johnson*, 903 F.3d 278 at 287).  Notably, "[t]hreadbare allegations" that the plaintiff paid a price premium are not enough to show "an injury in fact." *In re Plum Baby Food Litig.*, 637 F. Supp. 3d at 225.

Here, Plaintiffs fail to sufficiently plead a concrete injury under the premium price theory. Although Plaintiffs claim that consumers are willing to pay more for hypoallergenic products, Plaintiffs fail to identify any comparable, cheaper products to demonstrate that a premium price was in fact paid.  *See Id.* at 226 (dismissing the plaintiffs' claims because they failed to specify

any comparable, cheaper products); *see also Haggerty v. Bluetriton Brands, Inc.*, No. 21-13904, 2022 WL 17733677, at *4 (D.N.J. Dec. 16, 2022); *Kimca v. Sprout Foods, Inc.*, No. 21-12977, 2022 WL 1213488, at *8 (D.N.J. Apr. 25, 2022); *Estrada v. Johnson & Johnson*, No. 16-7492, 2017 WL 2999026, at *15 (D.N.J. July 14, 2017), *aff'd sub nom. In re Johnson & Johnson*, 903 F.3d at 293.  As such, Plaintiffs' allegations are similar to the "but-for" assertions that courts in this district have routinely found to be insufficient to plead an injury under a premium price economic injury theory.  *See In re Plum Baby Food Litig.*, 637 F. Supp. 3d at 226.

Furthermore, this Court notes that Plaintiffs claim that their allegations are similar to the plaintiffs' allegations in *Serrano*, which the district court found sufficient to plausibly allege an economic injury under the premium price theory.  *See Serrano v. Campbell Soup Co.*, 773 F. Supp. 3d 127, 147 (D.N.J. 2025).  However, Plaintiffs' reliance on *Serrano* is misplaced.  In *Serrano*, the plaintiffs identified a comparable product to adequately demonstrate that a premium price was paid.  *Id.*  Specifically, the plaintiffs in *Serrano* claimed that naturally flavored food products sell at a premium price compared to products that contain artificial flavors.  *Id.*  Thus, the court found that the price premium is the difference between an artificially flavored fruit juice beverage and a naturally flavored fruit juice beverage.[4]  *Id.*  Here, Plaintiffs simply state that consumers are willing to pay a premium price for hypoallergenic products but do not specify if that premium price is compared to non-hypoallergenic products or properly labeled hypoallergenic products. Accordingly, Plaintiffs' allegations are not enough to show an economic injury under the premium price theory.

---

[4] Additionally, the court noted that because the plaintiffs provided what they paid for the alleged mislabeled product, a factfinder could quantify their economic injury by examining the difference in prices.  *Id.*  Here, only two Plaintiffs provide the price they paid for the alleged mislabeled products.

### ii.     Benefit of the Bargain

Plaintiffs also assert that they have pled an economic injury under the benefit of the bargain theory. Under this theory, "[t]he economic injury is calculated as the difference in value between what was bargained for and what was received." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practice & Liability Litigation*, 903 F.3d 278, 283 (3d Cir. 2018). It is not enough for a plaintiff to allege that they purchased a product and then later wished they had not done so. *Id.* at 288. Plaintiffs proceeding under a benefit of the bargain theory must allege facts demonstrating that they did not receive the benefit of their bargain because either: (1) they received a defective product; or (2) "they would not have purchased the product at issue but for a specific misrepresentation made by the defendants, i.e., that the plaintiff was induced into purchasing the product by a specific misrepresentation." *Konkel v. Brother Int'l Corp.*, No. 22-00479, 2023 WL 3585354, at *5 (D.N.J. May 22, 2023) (citing *Schmitt v. Newell Brands Inc.*, No. 20-16240, 2023 WL 2662377, at *4 (D.N.J. Mar. 28, 2023)); see also *In re Plum Baby Food Litig.*, 637 F. Supp. 3d at 224 (finding that "[t]o allege economic harm under the benefit-of-the-bargain theory it is required that plaintiffs identify the specific misrepresentation that induced their purchase").

Plaintiffs argue that they did not receive the benefit of the bargain because they paid more for Defendant's Products than they would have had the products been properly labeled. According to Plaintiffs, they only purchased the Products because Defendant misrepresented the Products as truly hypoallergenic and suitable for sensitive skin. Defendant counters that Plaintiffs fail to plausibly allege a specific misrepresentation because the Amended Complaint is devoid of factual allegations that demonstrate that the Products are falsely labeled.

To the extent that Plaintiffs allege that Defendants misrepresented their Products, Plaintiffs have not alleged sufficient facts to support their claims. Plaintiffs' allegations are similar to the

9

plaintiffs in *Kimca*. *See Kimca v. Sprout Foods, Inc.*, No. 21-12977, 2022 WL 1213488, at *8 (D.N.J. Apr. 25, 2022). In *Kimca*, the plaintiffs alleged that baby food products contained heavy metals, which can be unsafe at elevated levels. *Id.* However, the court found that the plaintiffs' claims were speculative because the plaintiffs failed to connect their allegations by establishing that the levels of heavy metals in the challenged products were unsafe. *Id.* Here, although Plaintiffs allege that the Products contain known allergens, Plaintiffs fail to plead factual allegations regarding the levels of allergens in the Products that are likely to cause allergic reactions. As such, like the plaintiffs in *Kimca*, Plaintiffs fail to plausibly allege a key inference necessary for standing. Given this, Plaintiffs cannot establish Article III standing with a benefit of the bargain theory of economic harm.

### iii.    Products Not Purchased

Defendant also asserts that Plaintiffs lack standing to pursue their claims regarding products they did not purchase. Plaintiffs respond that, as to the unpurchased products, the issue of standing is properly addressed at the class certification stage, and it would be premature to resolve the question at the pleadings stage. This Court agrees with Plaintiffs.

The timing of a standing analysis may be different in the context of a class action. *See Simner v. LG Elecs. U.S.A., Inc.*, No. 21-13322, 2022 WL 3152707, at *4 (D.N.J. Aug. 8, 2022). When addressing whether a plaintiff may assert claims in a putative class action regarding products the plaintiff did not personally purchase or use, "courts in this District often hold that 'the standing issue becomes ripe only in the context of a motion for class certification.' " *Cannon v. Ashburn Corp.*, No. 16-1452, 2016 WL 7130913, at *4 (D.N.J. Dec. 7, 2016) (quoting *Burke v. Weight Watchers Int'l, Inc.*, 983 F. Supp. 2d 478, 482 (D.N.J. 2013) (collecting cases). Accordingly, this Court finds that dismissal of any claims under this theory for lack of standing is inappropriate at

this early stage.  Whether Plaintiffs have standing to pursue claims regarding the unpurchased products is a question not yet ripe for resolution. This Court will consider this at the class certification stage, if necessary.

### iv.    Advertisements not Seen or Relied Upon

In addition to alleging an injury in fact, a plaintiff must also demonstrate that the injury is "fairly traceable to the challenged action of the defendant. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  Here, Plaintiffs assert claims based on advertisements not seen or relied upon by them.  However, courts in this district have found that such claims fail to satisfy the "traceability" prong of Article III standing.  *See In re Mercedes-benz Emissions Litig.*, No.16-881, 2016 WL 7106020, at *8 (D.N.J. Dec. 6, 2016) (dismissing the plaintiffs' claims because the plaintiffs failed to allege that "they actually viewed any category of advertisements—i.e., Defendants' website, press releases, etc.—that contained the alleged misrepresentations"); *see also In re Gerber Probiotic Sales Pracs. Litig.*, No. 12-835, 2013 WL 4517994, at *6 (D.N.J. Aug. 23, 2013) (finding that the plaintiffs failed to establish traceability in connection with aspects of the defendant's marketing campaign not relied upon by the plaintiffs).

Plaintiffs premise their claims on Defendant's overall marketing campaign in connection with the Product and highlight excerpts from Defendant's website and retailer websites.  However, Plaintiffs have not alleged that they relied on any Defendant's misrepresentations other than the Products' labeling. Therefore, the Amended Complaint does not contain sufficient facts to allege that the injuries which resulted to Plaintiffs were fairly traceable to any of Defendant's representations other than those on the Products' labeling.  Accordingly, Plaintiffs lack Article III standing to pursue their claims based on advertisements not seen or relied upon by Plaintiffs.

11

**B. Rule 12(b)(6)**

Having found that Plaintiffs lack Article III standing, this Court is without subject matter jurisdiction to address Defendant's remaining arguments for dismissal.

**IV.    CONCLUSION**

For the reasons set forth above, the Motion to Dismiss is **GRANTED WITHOUT PREJUDICE**. Plaintiff shall have thirty (30) days to file an amended complaint. An appropriate order follows.

/s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     André M. Espinosa, U.S.M.J.
        Parties